DECISION.
{¶ 1} Defendant-appellant Courtney Smith appeals his convictions and sentences for aggravated robbery, robbery, two counts of felonious assault, and the accompanying firearms specifications. We affirm the guilty verdicts, but vacate the sentences and remand for resentencing.
 I. A Bootleg Cab and a Robbery {¶ 2} In January 2004, Walter Reed was operating a bootleg cab — he took passengers from place to place in exchange for money, but he was not a licensed cab driver. One night, he picked up three men in Cincinnati's Over-the-Rhine neighborhood at a bootleg-taxi stand. They asked him to drive them to Walnut Hills. Reed watched the men as they approached his car and repeatedly looked at their faces during the approximately 45 minutes that they were in his car.
 {¶ 3} Reed told the men that he had to take them back downtown because he had other plans. One of the men then asked Reed if he had change for a ten-dollar bill. When Reed reached into his pocket, one of the men hit Reed in the back of the head, and Reed felt a gun being pressed against his head. The men then took all of Reed's money — between $300 and $500 — and some jewelry.
 {¶ 4} One of the men continued to press the gun against Reed's head, and when Reed told them that they did not have to shoot him, the man placed the gun on Reed's leg and fired. The men fled from the scene. The bullet caused extensive damage — Reed went to a nursing home for several months during his recovery, and there was still some question at trial whether Reed's leg would have to be amputated.
 {¶ 5} Reed managed to drive himself to a gas station, where someone else called for the police and for medical attention. Officers responded to the scene and found a broken Ohio Department of Rehabilitation and Corrections identification card in the cab. The ID card had Smith's name and social security number on it, but not his photograph. Based on this evidence, the police obtained Smith's photograph and included it in a photographic lineup, which they then showed to Reed. Reed immediately identified Smith as one of his attackers.
 {¶ 6} Smith was arrested and charged with aggravated robbery, robbery, two counts of felonious assault, and several firearms specifications. At trial, Reed identified Smith as the man who sat directly behind him in the car, stating, "I'll never forget that face as long as I live."
 {¶ 7} Smith's defense was basically one of mistaken identity. Dianne Grace, Smith's fiancée, testified that she went to see Reed in the nursing home, and that Reed was unable to identify Smith as his attacker where the photograph depicted Smith with short hair and no facial hair, unlike it had been in the police lineup. Grace said that the photographs were taken a few days after the robbery, and that Smith had not worn his hair in braids in over a year.
 {¶ 8} But the jury did not believe Smith or Grace's stories. It found Smith guilty of all four counts and of all of the firearms specifications. The trial court then sentenced Smith to the maximum term of imprisonment on all four counts and ordered that they all be served consecutively — a total of 37 years' imprisonment.
 {¶ 9} On appeal, Smith assigns two errors: (1) that his convictions were against the sufficiency and the manifest weight of the evidence; and (2) that his maximum and consecutive sentences were contrary to law.
 II. Sufficiency and Manifest Weight of the Evidence {¶ 10} Smith's first assignment of error concerns the sufficiency and the weight of the evidence. In reviewing a record for sufficiency, we must determine whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt, when viewing the evidence in the light most favorable to the prosecution.[1]
 {¶ 11} A review of the manifest weight of the evidence puts the appellate court in the role of a "thirteenth juror."[2] We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[3] "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the case."[4] And a new trial should be granted on the weight of the evidence only in exceptional cases.[5]
 {¶ 12} Even Smith's trial counsel admitted that this case came down to a matter of identity. Neither party disputed that all the elements of the crimes had taken place, and neither party disputed that Reed had suffered serious physical harm because of the robbery. The only real question at trial was whether the state had proved beyond a reasonable doubt that Smith was at the scene and was an accomplice to the robbery. If the state met this burden, Smith was guilty on all counts.
 {¶ 13} Reed unequivocally identified Smith as one of the men in the cab when he was robbed. Smith claimed at trial and claims now that this identification was tainted because the police had shown Reed a photograph of Smith out of the lineup. But Reed testified that the only photograph that he remembered seeing was the one from the lineup. The jury was free to weigh the evidence as it saw fit. Further, Smith's ID card was found in the car. Viewing this evidence in the light most favorable to the state, a reasonable jury could have found Smith guilty. And we cannot say that the jury lost its way or created a manifest miscarriage of justice.
 {¶ 14} Smith further argues that the state failed to prove that he had a deadly weapon on or about his person during the commission of the crimes. While Reed admitted that he could not identify which of the men had hit him from behind and which of the men had shot him in the leg, as long as Smith was an accomplice, he was guilty of the crimes — an unarmed accomplice may be sentenced for a firearm specification.[6] As we have already concluded, the jury's finding that Smith was a party to the robbery was not against the sufficiency or the manifest weight of the evidence.
 {¶ 15} We therefore overrule Smith's first assignment of error.
 III. Smith's Sentences {¶ 16} In his second assignment, Smith argues that his maximum, consecutive sentences were contrary to law.
 {¶ 17} As we recently held in State v. Bruce,[7] Ohio's sentencing statutes do not permit the imposition of a maximum sentence under the United States Supreme Court's rulings in Blakely v. Washington[8] andUnited States v. Booker when based on a finding that the crime was the "worst form of the offense."[9]
 {¶ 18} But we have recently held in State v. Lowery that maximum sentences based on both "worst form of the offense" and the likelihood-of-recidivism findings are appropriate where the latter is based on the defendant's criminal record.[10] That was precisely the case here. The trial court explained Smith's criminal history in detail before finding that he posed the greatest likelihood of recidivism.
 {¶ 19} And as we recently held in State v. Montgomery,[11] there are no Blakely problems with consecutive sentencing in Ohio. The trial court made all the required statutory findings on the record; it did not improperly impose consecutive sentences.
 {¶ 20} Smith also contends that he should not have been sentenced consecutively on all the counts because the aggravated robbery and the robbery were allied offenses of similar import. He makes the same claim for the felonious assaults. But we have already addressed these issues in the past, and we have held that aggravated robbery and robbery are not allied offenses.[12] And we have held that felonious assault under R.C. 2903.01(A)(1) and felonious assault under R.C. 2903.01(A)(2) are not allied offenses, even if committed in the course of the same incident.[13] (This author dissented from the cases on allied offenses. But the Ohio Supreme Court, in State v.Rance,[14] has held to the contrary. Though that court has terribly misconstrued the double-jeopardy and lesser-included issues, we have to follow its dictates until Rance is overruled.)
 {¶ 21} The trial court even explained at the sentencing hearing why each of the crimes would involve a separate sentence.
 {¶ 22} But the trial court failed to advise Smith at sentencing of the possibility of post-release control — which in fact is not very likely given the length of the sentence here. This was reversible error under our holding in State v. Brown,[15] so we have to send the case back for resentencing.
 {¶ 23} We therefore sustain Smith's second assignment as it relates to the trial court's failure to adequately advise him that he may be subject to post-release control. We therefore vacate his sentences and remand for resentencing in accordance with our decision. We affirm the trial court's judgment in all other respects.
Judgment affirmed in part, sentence vacated, and cause remanded.
Gorman, P.J, and Sundermann, J., concur.
[1] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
[2] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.
[3] State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
[4] Section 3(B)(3), Article IV, Ohio Constitution.
[5] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717.
[6] See State v. Chapman (1986), 21 Ohio St.3d 41, 487 N.E.2d 566;State v. Hanning, 89 Ohio St.3d 86, 2000-Ohio-436, 728 N.E.2d 1059; Statev. Hickman, 5th Dist. No. 2003-CA-00408, 2004-Ohio-6760.
[7] 1st Dist. No. C-040421, 2005-Ohio-373.
[8] (2004), ___ U.S. ___, 124 S.Ct. 2531.
[9] (2005), ___ U.S. ___, 125 S.Ct. 738.
[10] 1st Dist. No. C-040157, 2005-Ohio-1181.
[11] 1st Dist. No. C-040190, 2005-Ohio-1018.
[12] See State v. Palmer, 148 Ohio App.3d 246, 2002-Ohio-3536,772 N.E.2d 726.
[13] See State v. Coach (May 5, 2000), 1st Dist. No. C-990349.
[14] 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699.
[15] 1st Dist. Nos. C-020162, C-020163, and C-020164, 2002-Ohio-5983.