[This opinion has been published in Ohio Official Reports at 89 Ohio St.3d 86.]

THE STATE OF OHIO, APPELLANT, *v.* HANNING, APPELLEE.

[Cite as *State v. Hanning*, 2000-Ohio-436.]

*Juvenile court—Transfer of case for criminal prosecution—R.C. 2151.26(B)(4)(b) applies, when—Complicity statute, R.C. 2923.03, does not apply to the juvenile bindover criteria set forth in R.C. 2151.26.*

1. The mandatory bindover provision of R.C. 2151.26(B)(4)(b) does not apply unless the child, himself or herself, had a firearm on or about the child's person or under the child's control while committing the act charged and the child displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.

2. The complicity statute, R.C. 2923.03, does not apply to the juvenile bindover criteria set forth in R.C. 2151.26.

(No. 99-437—Submitted February 22, 2000—Decided June 7, 2000.)

APPEAL from the Court of Appeals for Franklin County, No. 98AP-380.

———————————

{¶ 1} On July 22, 1997, three employees at Friendly's Food & Ice Cream in Columbus, Ohio, closed the restaurant at 11:00 p.m. While they were cleaning-up, a cleaning crew and delivery truck workers arrived. At around 12:40 a.m., they were all getting ready to leave when a masked man with a gun appeared in the doorway and told everyone to go to the back of the restaurant. The man, later identified as Leandreau Fiero, took the three employees to the back office, where he asked them to open the office door. Shift supervisor Regina Franz responded that she did not have a key, so the man led the three employees to the pantry.

{¶ 2} In the pantry, another masked individual with a gun, later identified as juvenile Derrick Hanning, defendant-appellee, had the other workers sitting on

the floor. Fiero asked who knew how to open the restaurant safe, and Franz responded that she could. Fiero took Franz to the back office again where he kicked the door down, Franz opened the safe, and Fiero dumped the money, including some of the trays used to store the money, into a duffel bag.

{¶ 3} After the individuals were gone, Franz called the police. Two deputies responded and got a description. Soon after, police pulled over a car with three suspects about three blocks from the restaurant. Hanning was in the front passenger seat. Fiero was in the back seat with a Ruger 9 mm handgun beside him. The third suspect, the driver, was a juvenile identified as James Imboden.

{¶ 4} Officers recovered a duffel bag from the car containing money and a metal tray in which the money had been stored in the restaurant safe. Officers also recovered a Crossman pellet gun from the trunk of the car.

{¶ 5} Hanning was arrested and later gave a statement to Detective Al Judy of the Franklin County Sheriff's Department. According to Hanning, Imboden was asleep in the back seat of the car when Hanning and Fiero robbed the restaurant. Hanning claimed to have carried a "fake" or "plastic" pellet gun while Fiero had a "real" gun, a 9 mm.

{¶ 6} On July 22, 1997, Hanning was charged with delinquency for his alleged commission of an aggravated robbery in violation of R.C. 2911.01. The complaint, filed in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, also alleged that Hanning committed the offense while armed with a deadly weapon or dangerous ordnance (a plastic BB gun) and a firearm as defined in R.C. 2923.11. The prosecutor's office also filed a motion requesting the juvenile court to relinquish jurisdiction over the seventeen-year-old Hanning pursuant to R.C. 2951.26(B), or in the alternative, R.C. 2951.26(C)(1).

{¶ 7} On September 9, 1997, the juvenile court held a probable cause hearing. At the hearing, the state moved to amend the complaint to delete the words

2

"plastic gun BB gun" and to replace them with the words "Ruger 9 mm handgun." The state explained that it was making the request "just to clear up the confusion that we're going to show that a firearm was used in this offense." Over the defense's objection, the trial court allowed the amendment.

{¶ 8} At the close of the evidence, defense counsel argued that Hanning had a "fake, plastic BB gun," not a firearm, and therefore Hanning did not have a firearm on or about his person or under his control while committing the act charged and did not display, brandish, indicate possession of, or use the firearm to facilitate the commission of the act charged in order to fall within the mandatory bindover provision of R.C. 2151.26(B)(4)(b). Further, defense counsel argued that the state did not show that the firearm could be readily rendered operable.

{¶ 9} The state argued that the juvenile court was required to relinquish jurisdiction over Hanning and bind him over for trial as an adult. The state contended that under the complicity statute, R.C. 2923.03, Hanning's actions in aiding and abetting the co-defendant who actually possessed the firearm were sufficient to invoke the mandatory bindover provision of R.C. 2151.26(B)(4)(b).

{¶ 10} The trial court noted that Hanning used a pellet gun and did not actually possess a firearm during the commission of the robbery. However, the trial court applied the complicity statute to the mandatory bindover provision set forth in R.C. 2151.26(B)(4)(b) and bound Hanning over for trial as an adult. On March 18, 1998, Hanning pled guilty to robbery without specification and was sentenced to seven years' incarceration.

{¶ 11} Hanning appealed, and the Franklin County Court of Appeals reversed his conviction and sentence and remanded the cause to the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, for further proceedings under R.C. 2151.26(C)(1).

{¶ 12} The cause is now before this court upon the allowance of a discretionary appeal.

---

*Ron O'Brien*, Franklin County Prosecuting Attorney, and *Amy H. Kulesa*, Assistant Prosecuting Attorney, for appellant.

*Judith M. Stevenson*, Franklin County Public Defender, *John W. Keeling* and *Rebecca Steele*, Assistant Public Defenders, for appellee.

---

**LUNDBERG STRATTON, J.**

{¶ 13} Today we are asked to determine whether the complicity statute, R.C. 2923.03, applies to juvenile bindover criteria set forth in R.C. 2151.26. For the reasons that follow, we find that it does not and we therefore affirm the judgment of the court of appeals.

## I. History of Juvenile Justice

{¶ 14} The first juvenile court was established in Chicago, in 1899. Zierdt, The Little Engine that Arrived at the Wrong Station: How to Get Juvenile Justice Back on the Right Track (1999), 33 U.S.F.L.Rev. 401, 406-409. The juvenile justice system is grounded in the legal doctrine of *parens patriae*, meaning that the state has the power to act as a provider of protection to those unable to care for themselves. *In re T.R.* (1990), 52 Ohio St.3d 6, 15, 556 N.E.2d 439, 448; Black's Law Dictionary (7 Ed.1999) 1137. Since its origin, the juvenile justice system has emphasized individual assessment, the best interest of the child, treatment, and rehabilitation, with a goal of reintegrating juveniles back into society. See D'Ambra, A Legal Response to Juvenile Crime: Why Waiver of Juvenile Offenders is Not a Panacea (1997), 2 Roger Williams U.L.Rev. 277, 280.

{¶ 15} In the early juvenile justice system, although the child was accused of a criminal offense, many of the formal criminal procedures in adult court were omitted. See Feld, The Transformation of the Juvenile Court (1991), 75 Minn.L.Rev. 691, 693-695. While some of the formal adult court procedures have been adopted since then, the language of the proceedings today still reflects the

rehabilitative goals of the juvenile justice system. Instead of "defendants," children are "respondents" or simply "juveniles"; instead of a trial, children receive "hearings"; children are not found guilty, they are "adjudicated delinquent"; and instead of sentencing, children's cases are terminated through "disposition." See R.C. Chapter 2151 and Rules of Juvenile Procedure. In addition, traditionally juveniles have been shielded from the stigma of the proceedings by keeping hearings private and not publishing juveniles' names. See Champion & Mays, Transferring Juveniles to Criminal Courts: Trends and Implications for Criminal Justice (1991) 38.

{¶ 16} Through some United States Supreme Court decisions in the 1960s and 1970s, see *Kent v. United States* (1966), 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84; *In re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527; *In re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, juveniles were given many of the same procedural protections as adults, making the proceedings more formal. Bell, Ohio Gets Tough on Juvenile Crime: An Analysis of Ohio's 1996 Amendments Concerning the Bindover of Violent Juvenile Offenders to the Adult System and Related Legislation (1997), 66 U.Cin.L.Rev. 207, 213. Yet, the goals of rehabilitation and protection remained.

{¶ 17} According to some statistics, between 1965 and 1990, juvenile arrests for violent crime quadrupled. Redding, Juveniles Transferred to Criminal Court: Legal Reform Proposals Based on Social Science Research (1997), 1997 Utah L.Rev. 709, 762. As the juvenile crime rate began to rise, the public demanded tougher treatment of juveniles, and policymakers around the nation rushed to legislate a cure. See, generally, Rossum, Holding Juveniles Accountable: Reforming America's "Juvenile Injustice System" (1995), 22 Pepperdine L.Rev. 907.

II. Rise in Juvenile Crime and the Legislative Response

**{¶ 18}** As part of Ohio's response to rising juvenile crime, in 1996, the General Assembly enacted Am.Sub.H.B. No. 1, which included one of the hallmarks of this "get tough" approach, *i.e.*, R.C. 2151.26, which provides for mandatory bindovers to transfer children age fourteen and older in certain situations. 146 Ohio Laws, Part I, 1, 18. In most instances involving delinquency, juveniles can be effectively tried and handled in the juvenile justice system. However, in some extraordinary cases, involving older or violent offenders, the General Assembly enacted R.C. 2151.26 to provide special measures for transferring these juveniles to adult court.

**{¶ 19}** Two types of transfer exist under Ohio's juvenile justice system: discretionary and mandatory. Discretionary transfer, as its name implies, allows judges the discretion to transfer or bind over to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system or appear to be a threat to public safety. See R.C. 2151.26(C).

**{¶ 20}** Mandatory transfer removes discretion from judges in the transfer decision in certain situations. One such mandatory transfer situation enumerated in the juvenile bindover statute, R.C. 2151.26, is where, as in this case, the juvenile is alleged to have used a gun in commission of certain crimes. Under this provision:

"After a complaint has been filed alleging that a child is a delinquent child for committing an act that would be an offense if committed by an adult, the court at a hearing shall transfer the case for criminal prosecution to the appropriate court having jurisdiction of the offense if the child was fourteen years of age or older at the time of the act charged, if there is probable cause to believe that the child committed the act charged, and if one or more of the following applies to the child or the act charged:

" * * *

"(4) The act charged is a category two offense, other than a violation of section 2905.01 of the Revised Code, the child was sixteen years of age or older at

the time of the commission of the act charged, and either or both of the following apply to the child:

"* * *

"(b) The child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged."

### III. The Case of Derrick Hanning

{¶ 21} In this case, all parties agree that during the robbery, Hanning possessed a plastic BB gun, while his adult accomplice possessed the 9 mm Ruger handgun. All parties agree that a plastic BB gun or pellet gun does not fit the definition of a firearm under R.C. 2923.11(B), which defines the term as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable."

{¶ 22} Accordingly, the state concedes that Hanning did not personally have a firearm on or about his person or under his control, nor did he personally display, brandish, indicate possession of, or use a firearm to facilitate the commission of the act charged. Rather, the state contends that the complicity statute is key to our analysis because it provides that a person who is guilty of complicity in the commission of an offense "shall be prosecuted and punished as if he were a principal offender." R.C. 2923.03(F). We disagree.

{¶ 23} As in any case involving a statute, we must begin our analysis by examining the language of the statute. "The polestar of statutory interpretation is legislative intent, which a court best gleans from the words the General Assembly used and the purpose it sought to accomplish." *State v. Elam* (1994), 68 Ohio St.3d 585, 587, 629 N.E.2d 442, 444, citing *State v. Davis* (1985), 16 Ohio St.3d 34, 35,

16 OBR 449, 450, 476 N.E.2d 655, 656. Thus, "[w]here the wording of a statute is clear and unambiguous, this court's only task is to give effect to the words used." *Id.*

{¶ 24} Turning to the language of the statutes, R.C. 2923.03 defines complicity and provides that "[w]hoever violates this section is guilty of complicity in the *commission of an offense,* and shall be prosecuted and punished as if he were a principal offender." (Emphasis added.) R.C. 2923.03(F).

{¶ 25} As noted above, one situation where the juvenile transfer statute requires juveniles to be transferred to adult court is where the act charged is a category two offense, the child was at least sixteen at the time of the commission of the act charged, and the child is "alleged to have had a firearm *on or about the child's person* or *under the child's control* while committing the act charged *and* to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged." (Emphasis added.) R.C. 2151.26(B)(4)(b).

{¶ 26} A plain reading of both statutes does not permit this court to apply the complicity concept of R.C. 2923.03 to the bindover proceedings of R.C. 2151.26 because the bindover statute itself does not provide that a child can be bound over based on the fact that a firearm was used by an accomplice. If the General Assembly had intended for a mandatory bindover to occur whenever, as here, an accomplice of the juvenile used a firearm in committing the crime charged, it could have drafted the statute to expressly so provide.

{¶ 27} In examining legislative intent, we conclude that in R.C. 2151.26(B)(4)(b), the General Assembly has provided a narrow exception to the usual criteria for determining amenability in certain situations where an older child has been accused of an inherently dangerous offense (category one and two offenses). The General Assembly made a determination that the act of the child having a firearm and displaying, brandishing, indicating possession of, or using the

8

firearm during the commission of the specified offense is such an inherently dangerous act that a bindover is necessary in that limited instance.

**{¶ 28}** Yet in so doing, the legislature established certain criteria that must be met in order for a bindover to be required. The plain language of those criteria, as already discussed above, articulates the requirement that the child, himself or herself, have the firearm on or about his or her person or under his or her control, and for that child to have displayed, brandished, indicated possession of, or used the firearm to facilitate the commission of the act charged. This clear language evidences an intent on behalf of the General Assembly to look at the individual actions of the child and, moreover, shows an unequivocal intent not to bind that child over based upon the actions of an adult accomplice.

**{¶ 29}** Although we conclude that the plain language of the bindover statute requires the child to personally have a firearm on or about his or her person or under his or her control while committing the act charged and to have displayed, brandished, indicated possession of, or used the firearm to facilitate the commission of the act charged, the state seeks to apply the complicity statute to the mandatory bindover criteria set out in R.C. 2151.26(B)(4)(b). While complicity is not designated as a category one or category two offense under R.C. 2151.26(A), the state argues that a charge of complicity may be stated either in terms of the complicity statute "or in terms of the principal offense." R.C. 2923.03(F). Thus, the state claims that if the charge of a certain offense would trigger the mandatory bindover provision of R.C. 2151.26, then the charge of complicity in that offense, pursuant to R.C. 2923.03, also triggers the mandatory bindover provision.

**{¶ 30}** The state contends that *State v. Chapman* (1986), 21 Ohio St.3d 41, 21 OBR 327, 487 N.E.2d 566, supports this theory. In *Chapman,* this court considered the question of whether an unarmed accomplice to an armed robbery, convicted of violating R.C. 2911.01, may be sentenced to a mandatory three-year term under the penalty-enhancement provision of former R.C. 2929.71(A)(2), now

R.C. 2929.14(D)(1). This court had previously considered the same question with regard to former R.C. 2929.71 before it was amended on June 30, 1983. *State v. Moore* (1985), 16 Ohio St.3d 30, 16 OBR 410, 476 N.E.2d 355. We reached the same conclusion in both cases, holding that an individual indicted for and convicted of violating R.C. 2911.01, aggravated robbery, and of a firearm specification under R.C. 2941.141, is subject to sentencing enhancement pursuant to former R.C. 2929.71, regardless of whether he or she was the principal offender or an unarmed accomplice. See *Moore,* syllabus; *Chapman*, syllabus.

{¶ 31} It is true that an accomplice to a crime is subject to the same prosecution and punishment as the principal offender under R.C. 2923.03(F). It is also true that an accomplice is as culpable in a crime as the principal offender. *Moore*, 16 Ohio St.3d at 33, 16 OBR at 412, 476 N.E.2d at 357. But *Moore* and *Chapman* are inapplicable to the present case because, as the court of appeals noted, neither case raised the issue of whether complicity applies to juvenile bindover criteria.

{¶ 32} Further, while we applied complicity to a firearm specification in those two cases involving adult principals and adult accomplices, we cannot find that it was the intent of the General Assembly to attribute the actions of adult offenders to juveniles when making determinations regarding binding juveniles over to adult court. Adults are presumed to be responsible for their actions and are presumed to have the ability to think for themselves and make their own decisions independently of any accomplices, so it is reasonable to hold adult co-defendants accountable for an accomplice's actions. But children are easily influenced and persuaded by adults. To require bindover for a child based on an adult accomplice's decision to use a firearm through application of the complicity statute runs contrary not only to the doctrine of *parens patriae*, upon which the General Assembly built the juvenile criminal justice system, but to common sense.

**{¶ 33}** Our holding does not allow Hanning or other juveniles to escape responsibility for their own actions. We merely find that the legislature did not intend to automatically attribute responsibility to the juvenile for the actions of his or her accomplice. Contrary to the judge's remarks at the probable cause hearing, and contrary to the state's argument, Hanning and other youths who find themselves in the same situation are not "saved" by the fact that someone other than themselves personally possessed the firearm. Juveniles in Hanning's situation are still subject to transfer to adult court under R.C. 2151.26(C), which provides that a child who commits a felony can be bound over if he is fourteen years of age or older and the results of an investigation and hearing indicate reasonable grounds to believe that the child is not amenable to care or rehabilitation in the juvenile system and the safety of the community requires that the child be placed under legal restraint, including, if necessary, for a period extending beyond the child's majority.

**{¶ 34}** In order to make the determination of whether these criteria are met, there must be an investigation, including a mental examination of Hanning made by a public or private agency or a person qualified to make the examination. R.C. 2151.26(C)(1)(c). The juvenile court must look at Hanning's unique characteristics and actions, including whether he has a history indicating a failure to be rehabilitated. R.C. 2151.26(C)(2)(a) through (e). After this process, the juvenile court, in its discretion, will decide whether to bind Derrick Hanning over to adult court.

**{¶ 35}** Because we conclude that R.C. 2151.26(B)(4)(b) is a narrow exception to the general rule of judicial discretion, and because the plain language of the statute does not provide for imposing an accomplice's liability onto the juvenile, we hold that the mandatory bindover provision of R.C. 2151.26(B)(4)(b) does not apply unless the child, himself or herself, had a firearm on or about the child's person or under the child's control while committing the act charged and the child displayed the firearm, brandished the firearm, indicated possession of the

firearm, or used the firearm to facilitate the commission of the act charged. Further, we hold that the complicity statute, R.C. 2923.03, does not apply to the juvenile bindover criteria set forth in R.C. 2151.26. Accordingly, we affirm the court of appeals' judgment to remand the cause to the juvenile court for further consideration under R.C. 2151.26(C) of whether Hanning should be bound over to adult court under the discretionary transfer provisions.

*Judgment affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK, J., concurs in judgment.

DOUGLAS, J., dissents.

_____