[Cite as *State v. Sampson*, 2016-Ohio-4560.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 103311

---

### STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

### BRIAN SAMPSON

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART,
REVERSED IN PART AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-590035-A

**BEFORE:**  Blackmon, J., Kilbane, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:**  June 23, 2016

**ATTORNEY FOR APPELLANT**

Timothy Young
Ohio Public Defender

By: Brooke M. Burns
Assistant Public Defender
250 East Broad Street
Suite 1400
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Daniel T. Van
Assistant County Prosecutor
9th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} Brian Sampson ("Sampson") appeals his mandatory transfer from juvenile court to the general division of common pleas court ("adult court"), stemming from his involvement in a bank robbery. Sampson assigns six errors for our review.[1] Having reviewed the record and pertinent law, we affirm in part, reverse in part and remand the case to the trial court to calculate credit for time served in the juvenile detention facility. The apposite facts follow.

{¶2} On August 30, 2014, 16-year-old Sampson was involved in a bank robbery that was captured on multiple video surveillance tapes. A complaint was filed against Sampson in juvenile court alleging, inter alia, aggravated robbery and kidnapping, which are "category two offenses" subject to mandatory transfer to adult court under certain conditions. R.C. 2152.10(A)(2); 2152.02(CC)(1). On October 2 and 3, 2014, the juvenile court held a hearing to determine whether there was probable cause to order a mandatory transfer. The following evidence was presented at this hearing.

{¶3} At approximately 8:30 a.m. on August 30, 2014, two Ohio Savings Bank employees were opening a branch in Garfield Heights, when a man named Landon McFarland approached and prevented them from closing and locking the front door. McFarland pointed a small gray gun at one of the employees and said, "This is a robbery." McFarland ushered the two employees inside the bank and a second male followed them. The bank's assistant manager, Jennifer Bonnette, identified the second male as Sampson. Bonnette stated that she does not recall Sampson having a gun nor does she recall him speaking. McFarland pointed his weapon at both employees and instructed them to open the vault; however, after three attempts, they were

unsuccessful.

{¶4} According to Bonnette, Sampson was pacing and "was closer to me mainly on the side of me and behind me. The individual with the gun was more or less next to [the other employee]." A third employee appeared at the branch, and McFarland told Sampson to let her in. Either Sampson or McFarland took this third employee's purse off of her arm. The men ordered everyone outside and "sped off in a vehicle."

{¶5} Christopher Moore, a security manager at Ohio Savings Bank, testified that there are approximately 16 video cameras in the bank that record "security footage" of "pretty much * * * any area in the bank." According to Moore, "there were two cameras specifically that captured the appropriate footage * * * [including] the entire robbery as it unfolds * * *." These two videos were played at the probable cause hearing. Moore testified that the videos showed that "[b]oth suspects in the robbery had firearms in their hands at different times and pointed them at our tellers." Moore testified that Sampson "didn't initially brandish the weapon," but he eventually pulled it out from his waistband.

{¶6} When describing the video footage of Sampson brandishing a firearm, Moore testified that "[i]t's quick and it's, you know, not the best — you can't zoom in on the cameras, but you can definitely tell that there's a weapon in his hand." Moore testified that both videos show Sampson brandishing a "two-toned, silver-barrel firearm" and pointing it at one of the employee's back.

{¶7} James Mendolera, who is a sergeant with the Garfield Heights police department, testified that the vehicle in which Sampson and McFarland drove away from the scene was recovered nearby in Maple Heights. The police found the bank employee's purse and cell phone

---

[1]See appendix

in the car, along with two firearms in the glove compartment.

{¶8} Sgt. Mendolera testified that Sampson gave him a statement regarding the incident. Sampson told him that McFarland recruited him to help rob a bank. McFarland handed Sampson a silver and black 9 millimeter Ruger and told Sampson "to follow him and just to watch his back and just do what he does." Sgt. Mendolera testified that Sampson told him "that when he held the gun, he knew it was real. It was heavy, it was real." Sampson said "he knew guns." According to Sgt. Mendolera, Sampson admitted to bringing the gun into the bank and, at one point, "he pulled the gun out and he had the gun out while covering the bank." Sgt. Mendolera testified that Sampson identified the "9 millimeter Ruger, silver and black" gun taken from the recovered vehicle as the weapon he had in the bank.

{¶9} After the hearing, the court found probable cause that Sampson committed the offenses alleged in the complaint, including that he "had a firearm on or about his person or under his control, [and] displayed, brandished, indicated possession, or used the firearm." The court ordered the case transferred to adult court pursuant to R.C. 2152.12.

{¶10} On May 13, 2015, Sampson pled guilty to aggravated robbery and kidnapping with firearm specifications. On July 17, 2015, the court sentenced Sampson to four years in prison on the underlying offenses, to run consecutive to three years in prison for the firearm specification. Sampson filed this timely appeal.

## Probable Cause for Mandatory Transfer

{¶11} "[A] juvenile court's probable-cause determination in a mandatory-bindover proceeding involves questions of both fact and law * * *." *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 51. Upon review, "we defer to the trial court's determinations regarding witness credibility, but we review de novo the legal conclusion whether

the state presented sufficient evidence to demonstrate probable cause to believe that the juvenile committed the acts charged."  *Id.*

{¶12} Certain juvenile cases are subject to mandatory transfer to adult court pursuant to R.C. 2152.12.   For example, mandatory transfer applies when

> [t]he child is charged with a category two offense, * * * the child was sixteen
>
> years of age or older at the time of the commission of the act charged, and * * *
>
> [t]he child is alleged to have had a firearm on or about the child's person or under
>
> the child's control while committing the act charged and to have displayed the
>
> firearm, brandished the firearm, indicated possession of the firearm, or used the
>
> firearm to facilitate the commission of the act charged.

R.C. 2152.12(A)(2)(b).

{¶13} Additionally, R.C. 2152.12(A)(1)(b)(ii) requires the juvenile court to hold a hearing prior to the mandatory transfer to determine if "there is probable cause to believe that the child committed the act charged."

{¶14} In the instant case, there is no dispute that Sampson was 16 at the time of the act, and the offenses he is alleged to have committed are statutory "category two offenses." Sampson argues, however, that "the evidence presented at the probable cause hearing was insufficient to establish that [he] displayed, brandished, indicated possession, or used the firearm to facilitate the robbery."   Sampson further argues that, as a result, he should not have been subject to mandatory transfer to adult court.

{¶15} In support of this argument, Sampson cites *State v. Hanning*, 89 Ohio St.3d 86, 728 N.E.2d 1059 (2000), which holds that the mandatory transfer statute "does not provide that a child can be [transferred to adult court] based on the fact that a firearm was used by an

accomplice." *Id.* at 91. The *Hanning* court concluded that the mandatory transfer statute "requires the child personally to have a firearm on or about his or her person or under his or her control while committing the act charged and to have displayed, brandished, indicated possession of, or used the firearm to facilitate the commission of the act charged."

{¶16} Sampson argues that there was insufficient evidence to show that he displayed or brandished a firearm, because the "victims did not see [him] with a firearm, did not know that he had a firearm, and he did not use the firearm to affect the robbery in any way. For all but a split second, the firearm was concealed in his pants."

{¶17} The only victim to testify at Sampson's probable cause hearing stated that she did not see Sampson with a gun. However, the two video tapes show Sampson take a gun out of the waistband of his pants, albeit briefly, and point it at one of the bank employee's back. The bank's security manager testified that he saw Sampson with a weapon in his hand on the videos. Furthermore, the police officer who took Sampson's statement testified that Sampson admitted that "he pulled the gun out * * * while covering the bank."

{¶18} Given the evidence presented at the hearing and the deferential standard of review we must apply to the juvenile court's determinations regarding witness credibility, we cannot say the court erred in finding probable cause that Sampson committed the acts charged, including displaying, brandishing, or indicating possession of a firearm. Accordingly, Sampson's first assigned error is overruled.

### Constitutionality of Mandatory Transfer Statutes

{¶19} In his second, third, and fourth assigned errors, Sampson argues that the mandatory bindover provisions of R.C. 2152.10(A)(1)(a), 2152.10(A)(2)(b), 2152.12(A)(1)(a), and

2152.12(A)(1)(b) violate his constitutional rights to due process and equal protection. The posture of this case is substantially similar to *State v. Mays*, 2014-Ohio-3815, 18 N.E.3d 850 (8th Dist.) and *State v. Beauregard*, 8th Dist. Cuyahoga No. 101418, 2015-Ohio-1021, in which the juvenile offenders challenged the constitutionality of the mandatory transfer statutes.

{¶20} In *Mays* and *Beauregard*, this court held that the constitutional challenges were not raised in the juvenile or adult courts and, therefore, were waived. *Mays* at ¶ 43; *Beauregard* at ¶ 17. Additionally, this court found that Mays and Beauregard waived their constitutional challenges by pleading guilty. *Id.* Nonetheless, this court held the following: "our sister districts have consistently upheld the constitutionality of the mandatory bindover provisions * * * [and] we will continue to follow the precedent on this issue unless the Supreme Court of Ohio rules otherwise." *Beauregard* at ¶ 18-19. We note that the Supreme Court of Ohio has agreed to consider the constitutionality of the mandatory transfer statutes in *State v. Aalim*, 143 Ohio St.3d 1498, 2015-Ohio-4468, 39 N.E.3d 1270; however, an opinion has not been released in *Aalim* as of the date the opinion in the case at hand was journalized. In the instant case, Sampson did not raise constitutional challenges to his mandatory transfer in either the juvenile or adult court prior to entering a guilty plea. In following the precedent of *Mays*, *Beauregard*, and other Ohio appellate courts, we reject Sampson's constitutional challenges and overruled his second, third, and fourth assigned errors.

### Credit for Confinement in Juvenile Detention Facility

{¶21} Pursuant to R.C. 2967.191, an offender's prison sentence shall be reduced "by the total number of days that the [offender] was confined for any reason arising out of the offense for which the [offender] was convicted and sentenced, including confinement in * * * a juvenile facility." It is the sentencing court's responsibility to determine and "include in the sentencing

entry the number of days * * * by which the department of rehabilitation and correction must reduce the stated prison term * * *."   R.C. 2929.19(B)(2)(g)(i).

**{¶22}** In the case at hand, the state concedes that the trial court did not address this issue. Sampson has been confined since the date of the offense, August 30, 2014, and received no credit for time served.   Accordingly, Sampson's fifth assigned error is sustained and this case is remanded to the trial court to journalize the appropriate calculation of confinement in juvenile facility, which shall be credited to Sampson's prison sentence.   *See State v. Ponyard*, 8th Dist. Cuyahoga No. 101266, 2015-Ohio-311, ¶ 11.

### Ineffective Assistance of Counsel

**{¶23}** To succeed on a claim of ineffective assistance of counsel, a defendant must establish that his or her attorney's performance was deficient and that the defendant was prejudiced by the deficient performance.   *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.   The object of an ineffectiveness claim is not to grade counsel's performance."   *Id.* at 697.   *See also State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 3743 (1989).

**{¶24}** In Sampson's sixth and final assigned error, he argues that his trial counsel was ineffective for "failing to object to an improper and unconstitutional transfer, as well as the trial court's failure to order credit for time served."   Our disposition of assigned errors one through four, concerning the mandatory transfer from juvenile court to adult court, addresses the first part of Sampson's argument.   We found that the transfer was proper and Sampson's constitutional rights were not violated.   Therefore, Sampson has failed to establish that his counsel's

performance regarding this issue was deficient.

**{¶25}** Turning to the failure to object to credit for time served issue, we find *Ponyard* instructive. In *Ponyard*, this court rejected an ineffective assistance of counsel argument based on a finding that the defendant suffered no prejudice, because "any error in the calculation of jail-time credit will be remedied on remand." *Id.* at ¶ 16. The same reasoning applies to the case at hand; thus, Sampson's sixth and final assigned error is overruled.

**{¶26}** Judgment affirmed in part, reversed in part and case remanded to the sentencing court to calculate and journalize Sampson's credit for time served in the juvenile detention facility.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

MARY EILEEN KILBANE, P.J., and
TIM McCORMACK, J., CONCUR

# APPENDIX

Assignments of Error

I.  The juvenile court erred when it found that Brian Sampson was eligible for mandatory transfer, because the State did not establish probable cause that [Sampson] displayed, brandished, indicated possession, or used the firearm to facilitate the commission of a category two offense.

II.  The juvenile court committed plain error when it transferred Brian Sampson's case for criminal prosecution because the mandatory-transfer provisions in R.C. 2152.10(A)(2)(b) and R.C. 2152.12(A)(1)(b) create an irrebuttable presumption that a child be subject to treatment as an adult.

III.  The juvenile court committed plain error when it transferred Brian Sampson's case for criminal prosecution because the mandatory-transfer provisions in R.C. 2152.10(A)(2)(b) and R.C. 2152.12(A)(1)(b) violate a child's right to due process of law.

IV.  The juvenile court committed plain error when it transferred Brian Sampson's case to adult court because the mandatory-transfer provisions in R.C. 2152.10(A)(2)(b) and R.C. 2152.12(A)(1)(b) violate a child's right to equal protection of law.

V.  The trial court erred when it failed to grant Brian Sampson jail time credit to reflect the total number of days he was confined in connection with this case.

VI. Brian Sampson was denied the effective assistance of trial counsel.