[Cite as *In re S.G.*, 2022-Ohio-897.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY


IN THE MATTER OF:

S.G., ALLEGED DELINQUENT CHILD.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 MA 0061**

---

Civil Appeal from the
Court of Common Pleas, Juvenile Division, of Mahoning County, Ohio
Case No. 2020 JA 00595 JUV

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Paul J. Gains*, Mahoning County Prosecutor*, and *Atty. Ralph M. Rivera*, Assistant Prosecuting Attorney, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Appellant and

*Atty. Nicholas S. Cerni,* Boardman Canfield Road, Suite M-1, Youngstown, Ohio 44512*, for Appellee.

Dated:  March 18, 2022

**D'Apolito, J.**

**{¶1}**   Appellant, State of Ohio, appeals the June 8, 2021 judgment entry of the Mahoning County Court of Common Pleas, Juvenile Division, finding that Appellee, S.G. (d.o.b. 8/15/2000), is amenable to rehabilitation in the juvenile justice system and setting the matter for a merits hearing.[1]  Appellant filed a notice of appeal on June 18, 2021, and we sustained Appellant's Motion for Leave to Appeal Pursuant to Appellant Rule 5(C) on August 16, 2021.  Briefing was complete on November 29, 2021.

**{¶2}**   S.G. is charged in the complaint alleging that he is a delinquent child with two counts of rape, in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree.  R.C. 2907.02(A)(1)(b) reads, in pertinent part, "No person shall engage in sexual conduct with another who is not the spouse of the offender, * * * when any of the following applies:   * * * (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

**{¶3}**   The alleged victim is S.G.'s first cousin, A.C. (d.o.b. 4/8/2006).   According to A.C.'s testimony at the probable cause hearing on March 30, 2021, the charges relate to two occasions in late 2017 and early 2018[2], when she performed fellatio on S.G., who was seventeen years of age at the time.  A.C. was eleven years of age on the first occasion and under the influence of marijuana provided to her by S.G., and twelve years of age on the second occasion.  A.C. testified at the probable cause hearing that she performed additional uncharged acts of fellatio on S.G. on several other occasions prior to her disclosure.

---

[1] S.G. was remanded to the Juvenile Justice Center pursuant to the June 8, 2021 judgment entry on appeal. However, S.G. was released from custody roughly two months later, on August 14, 2021, one day prior to his twenty-first birthday.  (8/13/21 J.E., p. 1.)

[2] The complaint alleges that both crimes occurred on December 31, 2017. However, Appellant moved without objection to amend the complaint to conform with the evidence offered at the probable cause hearing conducted on March 30, 2021.  A.C. testified that the second charged act occurred when she was twelve years of age.  As a consequence, the juvenile court amended the second count in the complaint to allege that the charged crime occurred "between December 31, 2017 and April 9, 2018." (3/30/20 Hrg., p. 44.)

**{¶4}** According to the police report attached to the complaint, A.C. disclosed the alleged abuse to a school counselor eleven months earlier on September 15, 2019. The complaint was filed on August 14, 2020, one day before S.G's twentieth birthday.

**{¶5}** Officer Kelly Jankowski, an investigator from the Family Investigative Service Unit of the Youngstown Police Department testified at the probable cause hearing that the investigation was assigned to her on September 19, 2019. Officer Jankowski further testified that delayed disclosure of sexual abuse in cases involving children is common, as is a continuing relationship between the victim and the perpetrator prior to and even after disclosure.

**{¶6}** The judgment entry finding that S.G. was amenable to the juvenile justice system and setting the matter for a merits hearing was issued roughly two months prior to S.G's twenty-first birthday. In this appeal, Appellant argues that the two months between the judgment entry on appeal and S.G.'s twenty-first birthday provided insufficient time to rehabilitate S.G. in the juvenile justice system, which is one of the statutory factors to be considered by the juvenile court before transferring a case to the general division. Appellant further argues that the majority of the remaining factors likewise favor transfer to the general division of the common pleas court, and as a consequence, the juvenile court abused its discretion when it retained jurisdiction.

**{¶7}** For the following reasons, we find that the juvenile court abused its discretion in retaining jurisdiction, insofar as the juvenile court reached a conclusion regarding rehabilitation that is unsupported by the record, as well as ignored many other relevant factors due to its focus on the delay in filing this case. Therefore, the judgment entry of the juvenile court is reversed, and this matter is remanded with instructions to the juvenile court to transfer this matter to the General Division of the Court of Common Pleas.

## LAW

**{¶8}** R.C. 2152.12, captioned, "Transfer of cases from juvenile court," governs discretionary transfers, and reads, in pertinent part:

> (B) Except as provided in division (A) of this section [murder charges], after a complaint has been filed alleging that a child is a delinquent child for committing an act that would be a felony if committed by an adult, the

juvenile court at a hearing may transfer the case if the court finds all of the following:

(1) The child was fourteen years of age or older at the time of the act charged.

(2) There is probable cause to believe that the child committed the act charged.

(3) The child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions. In making its decision under this division, the court shall consider whether the applicable factors under division (D) of this section indicating that the case should be transferred outweigh the applicable factors under division (E) of this section indicating that the case should not be transferred. The record shall indicate the specific factors that were applicable and that the court weighed.

(C) Before considering a transfer under division (B) of this section, the juvenile court shall order an investigation into the child's social history, education, family situation, and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child by a public or private agency or a person qualified to make the examination * * *.

{¶9} Subsections (D) and (E) of R.C. 2152.12 read, in their entirety:

(D) In considering whether to transfer a child under division (B) of this section, the juvenile court shall consider the following relevant factors, and any other relevant factors, in favor of a transfer under that division:

(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

(E) In considering whether to transfer a child under division (B) of this section, the juvenile court shall consider the following relevant factors, and any other relevant factors, against a transfer under that division:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or intellectual disability.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

## FACTS AND PROCEDURAL HISTORY

{¶10} On October 26, 2020, Appellant filed a Motion to Relinquish Jurisdiction to the General Division of the Mahoning County Court of Common Pleas for the purpose of prosecution.  At the probable cause hearing on March 30, 2021, A.C. testified that she was fourteen years of age and attended ninth grade at Youngstown Rayen Early College at the time of the hearing.  (3/30/21 Hrg., p. 23.) When asked if she recalled the time period between late 2017 and early 2018, A.C. responded, "[t]hat's the time where the events we are here for occurred * * *[w]hen [S.G.] made me suck his penis." (*Id.*, p. 24.) According to her testimony, she performed fellatio on S.G. "quite a few times," although she conceded that she could not provide an exact number.  (*Id.*)

{¶11} The first count of the complaint relates to December 31, 2017, when A.C. slept overnight at her grandmother's residence.  Both A.C. and S.G. had attended a family New Year's Eve party at her grandmother's house that evening, with aunts, uncles, and cousins all in attendance.  S.G. had resided with his grandmother since he was four or

five years of age because his father was incarcerated and his mother was addicted to illegal drugs.

{¶12} According to A.C.'s testimony, S.G. woke her and invited her to his room to smoke marijuana. Initially, she declined his invitation, but S.G. encouraged her to partake with the assurance that "it [would] be all right." (*Id.*, p. 26.) A.C. explained that she had known S.G. her entire life and they were "very close." (*Id.*)

{¶13} A.C. testified that S.G. "blew the smoke into [her] face and told [her] to breathe it in." (*Id.*, p. 27.) Thereafter, S.G. played video games on his Xbox and watched YouTube videos.

{¶14} A.C. further testified that she was noticeably impaired, as she had difficulty "sit[ting] up straight," and struggled to "hold her body weight up [sic.]" (*Id.*) As a consequence, S.G. asked A.C. if she wanted to sit on his lap. A.C. declined, telling S.G. that her mother cautioned her "not to sit on anybody's lap." (*Id.*)

{¶15} At some point, S.G. moved to the bed, and told A.C. to join him. A.C. testified that S.G. asked her to perform fellatio, but she said, "no." (*Id.*, p. 27-28.) Then he "pushed [A.C.'s] head down and made [her] suck his penis." (*Id.* at 27.)

{¶16} The second charge in the complaint relates to a date between December 31, 2017 and April 9, 2018 when A.C. was at her grandmother's house and went to the second floor to look in on her brother, who was playing with a young cousin in an upstairs bedroom. (*Id.*, p. 29.) S.G. summoned A.C. to his room and invited her to stay and watch him play a video game. A.C, who testified that she was "[p]robably [twelve] " at the time, provided the following account of the events that followed:

> I watched him play the game. And then he asked me to suck his dick again. And he had told me before that that would be the last time that he would ask me again [sic]. * * * And then I had brought that up, like you said it wouldn't happen again. And he said, come on, just one more time. I'm scared. And he just – like he kept on pushing me to. And then I was like this in the last time. I don't want to do it again. So then he made me suck his penis again.

(*Id.*, p. 29.)

**{¶17}** At the amenity hearing on June 2, 2021, Appellant offered a single witness, C.G., A.C.'s mother. Appellant offered C.G.'s testimony to establish that A.C. suffered psychological harm as a result of the charged acts.

**{¶18}** C.G. testified that she noticed a "change" in A.C. prior to her disclosure. C.G. errantly attributed the noticeable change in A.C.'s mood to depression resulting from her father's absence and C.G.'s disability. C.G. arranged for A.C. to attend sessions with a school counselor after A.C. engaged in self-harm and disclosed "intrusive thoughts towards herself [and] others." (6/2/2021 Hrg. p. 11.)

**{¶19}** C.G. described A.C. as a "bright, smiley-face girl that everybody just drawn around her [sic]" prior to the alleged abuse. However, in the years that followed, A.C.'s friend group dwindled as she struggled "to interact with people in school." (*Id.*)

**{¶20}** C.G. testified that A.G. continued at age fifteen to have difficulty with grooming. A.C.'s hair becomes matted and she "doesn't like to shave anymore." (*Id.* at p. 12.) According to C.G., A.C. has "really low self-esteem, low self-love." (*Id.*)

**{¶21}** A.C., who was previously an excellent student, had to attend summer school. She struggles with focus. At the time of the amenity hearing, A.C. was in treatment with two therapists and prescribed an unspecified medication.

**{¶22}** According to the psychological report dated June 1, 2021, S.G. demonstrated no mental health difficulties nor any intellectual disability. He left high school in the eleventh grade to support his daughter.

**{¶23}** S.G. began residing with his daughter, the child's mother (his girlfriend), and her parents, in their home after A.C.'s allegations resulted in his banishment from his grandmother's home. However, S.G.'s counsel informed the juvenile court at the amenity hearing that S.G. and his grandmother had reconciled and she was present. S.G. reported no history of sexual victimization.

**{¶24}** Pertinent to the above-captioned appeal, the psychologist opined that there was insufficient time for rehabilitation within the juvenile system given S.G.'s age. The psychologist further opined that "if the Court process were closer in time to the alleged instant offenses, there would have been sufficient time for rehabilitation within the juvenile justice system. Unfortunately, that is not the case and the court is left with three months of jurisdiction unless there are other legal possibilities." It can be gleaned from the report

that the psychologist believes that four years provides a sufficient amount of time to rehabilitate a rapist.

**{¶25}** At the amenability hearing, S.G.'s counsel provided the following argument against transfer:

> [S.G.] has really no history with the juvenile system. He had one incident when he was fifteen [robbery involving an all-terrain vehicle] and [was sentenced to one month of] community service. But he's never been to detention. He's never been to the Department of Youth Services. He's never been affiliated with gangs. He doesn't have a substance abuse problem. Unfortunately for [S.G.] and his upbringing, his mom was addicted to drugs, is in prison. His father has been incarcerated since [S.G. was] age five. He's been raised by his grandmother, who's here today. They have an excellent relationship. [S.G.] has always been in school. He dropped out in the 11th grade to support his daughter who he has an active relationship with [sic]. She's two. He's employed. During the interviews with [the psychologist] it was all positive comments by the doctor, saying that he answered the questions, he was relevant, he was goal directed, cooperative, had good behavioral control, no evidence of any mental health difficulties.

(6/2/21 Hrg., p. 15-16.)

**{¶26}** During the psychological examination, S.G. reported that he "work[ed] for Door Dash and Uber." (Report, p. 4.) He explained that "he helps a friend picking up food, making sure it's getting to the right place, and making sure the food is packaged correctly." S.G. previously worked for one week at Phantom Fireworks but left the job due to there being "too much hard labor." (*Id.*) S.G. also stocked shelves at a gas station for a time. His longest period of employment appears to have been at a furniture warehouse, however, he left that job "due to there being too many responsibilities related to his [ ] court situation." (*Id.*)

**{¶27}** At the conclusion of the hearing, the juvenile court specifically inquired whether there exists a rehabilitation program available to sex offenders in the adult

correctional system. Appellant responded that such a program exists but that it is not as extensive as the program available in juvenile court. Counsel for S.G. asserted that there are no classes, no mental health treatment, or rehabilitation for sex offenders in the adult system, only punishment.

**{¶28}** In the June 8th, 2021 judgment entry on appeal, the juvenile court opined that "[t]his is a difficult case based upon the facts. The charges are serious and the ramifications are as well." (6/8/2021 J.E., p. 1.) The juvenile court continued:

> The case was filed on August 14, 2020, one day before [S.G.] turned [twenty]. This all occurred to the detriment of both [S.G.] and alleged victim. Jurisdiction for this case expires on [S.G.] 21st birthday, which occurs on August 15, 2021. Due to the delay in filing, [S.G.] is at a disadvantage due to no action of his own.

(*Id.*)

**{¶29}** Although the juvenile court conceded that the victim's age, her familial relationship with S.G., S.G.'s emotional, physical, and psychological maturity, and the limited time remaining for rehabilitation favored transfer, the juvenile court concluded that the remaining factors demonstrated S.G.'s amenability to rehabilitation in the juvenile court system. The juvenile court cited S.G.'s lack of any prior juvenile sanction, but for community control, which was successfully completed, and the fact that S.G. did not have a firearm on his person when he allegedly committed the crimes. The juvenile court wrote, "[t]he Court is mindful of risk and recidivism assessments. The psychological report did not indicate any deviant behavior nor irrational conduct." (6/8/21 J.E., p. 1.)

**{¶30}** The juvenile court further observed that S.G. had not been under any court control sanctions, had continued to work, "and provide for his son." (*Id.)* According to the psychological report and defense counsel's argument at the amenity hearing, S.G.'s child is a girl. The juvenile court cited the delay in filing the charges as "another relevant factor." (*Id.)* Finally, the juvenile court predicated its conclusion on the fact that "[t]here have not been any new charges nor complaints filed regarding S.G." (*Id.)*

Case No. 21 MA 0061

## ANALYSIS

**{¶31}** The state asserts a single assignment of error:

**THE JUVENILE COURT ABUSED ITS DISCRETION WHEN IT CONCLUDED THAT ALLEGED DELINQUENT CHILD-APPELLEE S.G. WAS AMENABLE TO THE JUVENILE JUSTICE SYSTEM, BECAUSE IT IS UNREASONABLE TO CONLUDE THAT A JUVENILE OFFENDER CAN BE REHABILITATED FOR THE OFFENSE OF RAPE IN LESS THAN TWO MONTHS.**

**{¶32}** The juvenile court has "exclusive original jurisdiction" over any person under 18 years of age who is alleged to be delinquent. *State ex rel. Jean-Baptiste v. Kirsch*, 134 Ohio St.3d 421, 2012-Ohio-5697, 983 N.E.2d 302, ¶ 18, citing R.C. 2151.23(A)(1). With respect to dispositional orders entered by the juvenile court, the original jurisdiction exists, with certain inapplicable exceptions, "until terminated or modified by the court or until the child attains twenty-one years of age." R.C. 2152.22(A). Punishment is not the goal of the juvenile system, except as necessary to direct a child toward the goal of rehabilitation. *In re Caldwell*, 76 Ohio St.3d 156, 666 N.E.2d 1367, 1996-Ohio-410.

**{¶33}** "A juvenile-court judge has the discretion 'to transfer or bind over to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system or appear to be a threat to public safety.' " *Johnson v. Sloan*, 154 Ohio St.3d 476, 2018-Ohio-2120, ¶ 6, 116 N.E.3d 91, quoting *State v. Hanning*, 89 Ohio St.3d 86, 90, 728 N.E.2d 1059 (2000). In reaching this decision, the juvenile court enjoys a "wide latitude" in determining whether to transfer a juvenile case to the common pleas court for adult prosecution. *State v. Watson*, 47 Ohio St.3d 93, 95, 547 N.E.2d 1181 (1989).

**{¶34}** "[A] juvenile court's determination regarding a child's amenability to rehabilitation in the juvenile system is reviewed by an appellate court under an abuse-of-discretion standard." *In re M.P.*, 124 Ohio St.3d445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 41. "The term 'abuse of discretion' implies that the court's attitude is unreasonable, unconscionable, or arbitrary." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶35} Before addressing S.G.'s amenability to rehabilitation in the juvenile court in the two months between the amenability hearing and his 21st birthday, it is important to review the remaining factors the juvenile court was required to consider with respect to a discretionary transfer. The first three statutory factors favoring transfer have been established by the evidence in the record in this case. A.C. suffered psychological harm as a result of the alleged acts, and the psychological harm was exacerbated due to A.C.s tender age and her self-described "close" relationship with her cousin. Moreover, the close relationship between the cousins plainly facilitated the acts charged.

{¶36} Further, the eighth factor favoring transfer was established by the evidence contained in the record, that is, S.G. is emotionally, physically, or psychologically mature enough for the transfer. The juvenile court conceded that S.G. has a job and a child that he supports financially.

{¶37} On the other hand, the fourth through seventh statutory factors disfavor transfer, insofar as the alleged rapes were not committed for hire or as a part of a gang or other organized criminal activity. Further, S.G. did not possess or brandish a firearm during the alleged commission of the crimes, and he was not awaiting adjudication or disposition as a delinquent child, under a community control sanction, or on parole for a prior delinquent child adjudication or conviction. Likewise, S.G.'s previous juvenile sanction supports the conclusion that S.G. has been amenable to rehabilitation in the juvenile system, as he has not been charged with a theft crime since his one-month community-service sentence was successfully completed.

{¶38} Based on A.C.'s testimony, five of the factors disfavoring transfer are not established by the evidence in the record. A.C. did not induce or facilitate the acts charged, and S.G. did not act under provocation. Of equal import, S.G. had reasonable cause to believe that psychological harm would occur from the alleged acts, he was the principal actor charged, and he was not under the negative influence or coercion of another person. Finally, S.G. does not have a mental illness or intellectual disability.

{¶39} The remaining factors disfavoring transfer are essentially reiterations of the factors favoring transfer restated in the negative. Consequently, we find that the majority of the factors, without regard to S.G.'s amenability to rehabilitation in the juvenile court, favor transfer.

Case No. 21 MA 0061

**{¶40}** Turning to the amenability factor, the Ohio Supreme Court in *Watson, supra,* specifically acknowledged that a juvenile's age is an important consideration because the Department of Youth Services cannot retain custody of a delinquent child beyond the age of twenty-one:

> A juvenile who has demonstrated the ability to commit a major felony may require more time for rehabilitation than one whose offenses are less serious. Because of a juvenile's age, there may not be sufficient time remaining for rehabilitation to take place before the twenty-first birthday, even though the juvenile is otherwise amenable to rehabilitation. This factor falls within the requirement of Rule 30(E) that the age of the juvenile be considered.

> Further, the nature of the alleged act is usually relevant to the child's mental health, a factor which the court must also consider under Rule 30(E)(1). Generally the greater the culpability of the offense, the less amenable will the juvenile be to rehabilitation. In making the bindover decision, it would not be logical, or consistent with Rule 30(E), to consider the juvenile's past record but ignore the act which has brought the juvenile to court. Accordingly, we hold that in deciding whether to relinquish jurisdiction over a child, a juvenile court may consider the seriousness of the alleged offense when determining, pursuant to Juv.R. 30(C)(1), if the juvenile is "not amenable to care or rehabilitation" in the juvenile justice system.

*Id.* at 96. The Ohio Supreme Court in *Watson* affirmed the judgment entry of the juvenile court concluding that less than six years was insufficient time to rehabilitate a juvenile offender charged with involuntary manslaughter.

**{¶41}** We find that two months provides insufficient time to rehabilitate a repeat rapist. Although the record reflects that a rehabilitation program for sex offenders exists in juvenile court, it does not reveal the length of the program. Of equal import, the juvenile court observed that the psychological report did not disclose any "deviant behavior." The juvenile court's reliance on the foregoing observation completely ignores the alleged

Case No. 21 MA 0061

crimes, despite the juvenile court's finding that probable cause exists based on A.C.'s testimony at the hearing.

**{¶42}** Moreover, in *State v. McDowell,* 3d. Dist. Hancock No. 5-17-01, 2017-Ohio-9249, a seventeen-year-old male, with no previous record, was accused of raping a sixteen-year-old female schoolmate. The Third District affirmed that juvenile court's judgment entry transferring the matter to the general division. The Third District found no abuse of discretion where the juvenile court based its decision on the conclusion that the two years remaining before McDowell's twenty-first birthday provided an insufficient amount of time to rehabilitate him. *Id.* at ¶ 16.

**{¶43}** Although the juvenile court predicated its decision to retain jurisdiction on S.G's lack of a previous record, it is clear that court's decision turned on the amount of time that elapsed between the alleged crimes and the filling of the complaint. While the time that elapsed is a relevant consideration, the juvenile court's obvious preoccupation with that single factor lead the court to ignore both the fact that rehabilitation in such a short time was impossible, as well as the fact that the majority of the evidence in the record supported transfer.

**{¶44}** Accordingly, we find that the juvenile court abused its discretion in retaining jurisdiction, as no opportunity for meaningful rehabilitation was possible in the two months remaining prior to S.G.'s twenty-first birthday, and the remaining factors favored transfer to the general division. Therefore, the judgment entry of the juvenile court is reversed, and this matter is remanded with instructions to the juvenile court to transfer this matter to the General Division of the Court of Common Pleas.

Donofrio, P.J., concurs.

Robb, J., concurs.

For the reasons stated in the Opinion rendered herein, it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division, of Mahoning County, Ohio, is reversed. We hereby remand this matter to the trial court with instructions to transfer this matter to the general division of the Court of Common Pleas. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**