[Cite as *State v. Carter*, 2023-Ohio-4310.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                      No. 112429

    v.                          :

ARSHAUN CARTER,                         :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** November 30, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-668032-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kenan Mack, Assistant Prosecuting Attorneys, *for appellee.*

Timothy Young, Ohio Public Defender, and Timothy B. Hackett, Assistant Public Defender, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Arshaun Carter, appeals from his convictions and sentence after pleading guilty to robbery, theft, and having a weapon while under disability, asserting that the juvenile court abused its discretion in

transferring his case from juvenile court to the general division. For the reasons that follow, we vacate Arshaun's convictions and remand this matter to the juvenile court for proceedings consistent with this opinion.

## I. Discretionary Transfer under R.C. 2152.12(B)

{¶ 2} Ohio's juvenile justice system provides for two types of transfer: discretionary and mandatory. *State v. Hanning*, 89 Ohio St.3d 86, 90, 728 N.E.2d 1059 (2000). "Discretionary transfer affords juvenile court judges the discretion to transfer to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system or who appear to be a threat to public safety." *State v. Nicholas*, Slip Opinion No. 2022-Ohio-4276, ¶ 3, citing R.C. 2152.12(B). On the other hand, mandatory transfer removes discretion from judges and requires the transfer of a juvenile to adult court in certain situations. *Id.*, citing R.C. 2152.12(A). This case involves discretionary transfer.

{¶ 3} In a discretionary transfer proceeding, the juvenile court may transfer the child to adult court for prosecution if it finds (1) that the child was at least 14 years old at the time of the charged act, (2) there is probable cause to believe that the child committed the charged act, and (3) "[t]he child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions." R.C. 2152.12(B)(1), (2), and (3). Before making a discretionary-transfer decision, the juvenile court must order an "investigation into the child's social history, education, family situation, and any other factor bearing on whether child is amenable to juvenile rehabilitation,

including a mental health examination of the child by a public or private agency or a person qualified to make the examination." R.C. 2152.12(C).

{¶ 4} In determining whether to exercise its discretion to transfer a juvenile to adult court under R.C. 2152.12(B), the juvenile court must weigh the statutory factors in R.C. 2152.12(D) in favor of transfer against the statutory factors in R.C. 2152.12(E) against transfer, and the court must indicate on the record the specific factors it weighed in making its determination. R.C. 2152.12(B)(3). A juvenile court's decision to exercise its discretion to transfer a juvenile to adult court must be supported by a preponderance of the evidence. *Nicholas*, 2022-Ohio-4276, at ¶ 35. Further, the state bears the burden of persuasion when it asks the juvenile court to transfer a juvenile's case to adult court. *Id.* at ¶ 27. "Thus, the facts presented to the juvenile court with respect to a discretionary transfer must persuade the court that the juvenile is not amenable to care or rehabilitation in the juvenile system." *Id.*

## II. Juvenile Court Proceedings

{¶ 5} In October 2021, Arshaun was charged in juvenile court with aggravated robbery, three counts of robbery, and two counts of grand theft auto, all enhanced with one- and three-year firearm specifications. He was also charged with having a weapon while under disability, improper handling of firearms in a motor vehicle, and misdemeanor theft.

{¶ 6} The charges stemmed from an incident in which Arshaun, who was 15 years old at the time, and two accomplices encountered a man walking into a gas station. The man had a gun in his front pocket and, as the man stood at the counter,

Arshaun grabbed the man's gun from his pocket. They fell to the ground and Arshaun and one accomplice wrestled over the gun until Arshaun gained possession of the gun, the man's phone, and his car keys. The man ran out of the gas station. Arshaun handed the man's car keys to the second accomplice, who drove away in the man's car. Arshaun and the other accomplice got into the accomplice's car and drove away. The police obtained the license plate number of the accomplice's car from video surveillance at the gas station and apprehended Arshaun shortly thereafter.

{¶ 7} The state moved to transfer the case to adult court for prosecution. After a hearing, the juvenile court determined there was probable cause to believe that Arshaun had committed the charged acts that if committed by an adult would have corresponding felony and misdemeanor classifications, referred him to the juvenile court diagnostic clinic for a psychological evaluation, and set the matter for an amenability hearing.

{¶ 8} Prior to the amenability hearing, Dr. Lynn Williams, a forensic psychologist at the juvenile court diagnostic clinic, submitted a report regarding her psychological evaluation of Arshaun. She reported that Arshaun's mother and father had never married and his father was presently in prison. She said that for most of his life, Arshaun lived with his grandmother and other relatives because his mother had ongoing substance abuse and mental health issues, as well as a history of legal issues.

{¶ 9} Dr. Williams reported that Arshaun has an extensive history of mental health diagnoses and intervention in the community, beginning at age five for behavioral issues. She also reported that probation records reflected that Arshaun's grandmother had reached out "multiple times" for assistance with Arshaun's severe anger outbursts but despite two referrals for multisystemic therapy ("MST"), the referrals were denied "through no fault of the family." She further reported that although a referral was made to Phoenix Court, a specialized docket to divert youth with mental health issues, Arshaun's mother said she would be unable to fulfill the commitment and expectations of the program.

{¶ 10} Dr. Williams reported at least one psychiatric hospitalization for Arshaun on October 6, 2021, nine days before the incident at issue, "due to extreme aggressive behaviors." The hospital record indicated that Arshaun had stopped taking his prescribed psychiatric medication prior to this hospitalization. Dr. Williams reported that Arshaun was diagnosed during this hospitalization with intermittent explosive disorder and prescribed several psychiatric medications, but his grandmother reported that he was sent home without any medications and the prescriptions were delayed in getting filled.

{¶ 11} Dr. Williams said that Arshaun's grandmother recalled other psychiatric hospitalizations and that Arshaun had been admitted to University Hospitals when he was 14 years old for aggression and his mother had taken him to the hospital on a few occasions between 2019 and 2020 because of his temper tantrums. Dr. Williams reported that Arshaun had school-based and outpatient

services with multiple community agencies, including Murtis Taylor, Ohio Guidestone, Beech Brook, Applewood Centers, and Bellefaire JCB, and that his past mental health diagnoses included disruptive mood dysregulation disorder, bipolar disorder, attention deficit hyperactivity disorder, and oppositional defiant disorder. In addition to these diagnoses, a mental health counselor at the juvenile detention facility reported that Arshaun had unspecified anxiety, although she said that his anxiety symptoms had decreased while at the detention center due to medication management. Dr. Williams reported that Arshaun had been in the juvenile detention facility since his apprehension in October 2021 and that he had been respectful to both peers and staff and had not had any negative interactions or been involved in any physical altercations.

{¶ 12} Based on her psychological testing, Dr. Williams diagnosed Arshaun with unspecified bipolar disorder; unspecified disruptive, impulse control and conduct disorder; and cannabis use disorder severe, albeit in remission due to a controlled environment in the juvenile detention facility. She concluded that Arshaun's risk for dangerousness was in the high offender range. With regard to his emotional and psychological maturity, Dr. Williams noted that Arshaun's overall score when he was taking psychiatric medication was high, demonstrating an ability to make decisions with reasonable, sound judgment. She noted, however, that according to multiple sources, when Arshaun does not take his psychiatric medication, he can be a "completely different person," showing "poor self-regulation of emotions and deceased ability to practice self-control."

{¶ 13} With respect to treatment amenability, Dr. Williams reported that Arshaun's score placed him in the middle range, indicating that he has some characteristics that can indicate a capacity for change while other characteristics are more difficult to treat. She reported that to reduce recidivism, Arshaun needed mental health services that included psychiatric medication management, and that his prior problematic behaviors and inability to practice behavioral control consistently were sometimes linked to poor medication compliance. She stated that Arshaun has significant anger management issues that have resulted in patterns of defiant behavior, excessive physical aggression, and property destruction, and that he needs cognitive behavioral individual intervention to develop skills related to emotion regulation to improve the choices he makes in life. She reported that "medication management of his affective disorder will be a critical part of any intervention." Dr. Williams did not testify at the amenability hearing although both parties stipulated to her report.

{¶ 14} Kelli Toppin, Arshaun's probation officer, testified at the amenability hearing that Arshaun was on probation for a robbery where he and another youth robbed a young male of his bookbag on an RTA platform. On direct examination, Toppin testified that while on probation, there were two MST referrals for Arshaun's family but both referrals were closed through no fault of Arshaun. The first referral was closed because Arshaun's mother was not participating; the referral to Applewood MST was closed because the family was involved at the time with the

Cuyahoga Division of Child and Family Services and Applewood did not want to duplicate services.

{¶ 15} Toppin said that Arshaun was referred to the Fatherhood Initiative after his son was born in July 2021, but did not participate in those services. She testified that Arshaun was referred to Catholic Charities for a dual diagnosis and chemical assessment in late September 2021, but because he was hospitalized at the Fairview Hospital Psychiatric Clinic shortly after the referral, the assessment was not completed until after he was detained in the juvenile detention facility. Toppin testified that Arshaun was also referred in early October 2021 to Signature Health for individual counseling but the counseling never started because he was arrested on this case shortly after the referral. When the prosecutor asked Toppin on redirect, "So what services did Arshaun actually participate [in]," she acknowledged that other than the initial Signature Health appointment, "there was [sic] no additional services except for being in the psychiatric placement."[1]

{¶ 16} The prosecutor then asked Toppin, "Do you feel that any further probation would help Arshaun be rehabilitated in the Juvenile System?" She responded that she was not sure what other community-based services would be available for him because numerous agencies worked with him since he was young.

---

[1] Dr. Williams's report indicated that the appointment at Signature Health never took place because Arshaun became extremely agitated when he was not seen right away for his appointment. He left the building, picked up a rock, and began damaging his grandmother's car. Because he was "out of control," the police were called and he was arrested and transported to the Fairview Hospital Psychiatric Clinic, where he remained for two days.

{¶ 17} The trial judge then addressed the statutory factors set forth in R.C. 2152.12 and made the following findings:

> So the factors against transfer, you've not previously been committed to the Ohio Department of Youth Services ["ODYS"].
>
> You have an extensive mental health diagnosis which includes unspecified bipolar disorder; however, you're not intellectually disabled, so even though you have this diagnosis, you're able to function.
>
> You're only 16 for two months. Your birthday was in December, and as your attorney pointed out, your behavior in the Detention Center for the past 124 days other than some things recently has been appropriate.
>
> So those are the reasons why I would keep you here.
>
> So the reasons in favor of transfer, you know, it's been discussed whether victim suffered any physical, psychological or economic harm. I'm gonna say yes.
>
> If someone grabbed, whether I was allowed to have the gun or not, if somebody grabbed my car keys and my phone and took my car, I'd suffer some psychological and economic harm for sure. And when you did that, you had the firearm on or about your person. You grabbed the gun, then took his phone and keys.
>
> At the time of the act charged you were awaiting adjudication or disposition as a delinquent child and were on community control, I mean, you can check all those boxes.
>
> The other one is, you know, the question is the results of previous juvenile sanctions and program, will rehabilitation occur in the Juvenile System?
>
> You've been offered MST, Applewood MST, Signature Health, Fatherhood Initiative, Catholic Charities, Beech Brook, Murtis Taylor, Guidestone, PEP, and Bellefaire. *I don't think we have anything left, so you can check that box.* (Emphasis added.)
>
> And based on the psychological evaluation Rule 30 by Dr. Williams, it's clear that you're emotionally, physically, and psychologically mature enough for transfer.

And based on the offenses that you have, I do not believe that there's sufficient time to rehabilitate you within the Juvenile System; therefore, I'm going to find that the factors in favor of transfer outweigh those against transfer and I'm going to transfer your case to the Adult Division of the Court of Common Pleas or General Division for further proceedings and indictment.

## III. Adult Court Proceedings

{¶ 18} A ten-count indictment was filed in common pleas court charging Arshaun with aggravated robbery, three counts of robbery, two counts of grand theft, theft, improperly handling firearms in a motor vehicle, obstructing justice, and having weapons while under disability. Under a plea agreement, Arshaun pleaded guilty to robbery in violation of R.C. 2911.01(A)(1), a second-degree felony, with a one-year firearm specification; grand theft of a motor vehicle in violation of R.C. 2913.02(A)(1), a fourth-degree felony; and having weapons while under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree. The trial court sentenced him to an aggregate term of six years in prison and a fine of $4,000. This appeal followed.

## IV. Law and Analysis

{¶ 19} In his first assignment of error, Arshaun contends that the trial court abused its discretion by transferring his case to adult court.

{¶ 20} An appellate court reviews a juvenile court's determination regarding a juvenile's amenability to rehabilitation or treatment in the juvenile system under an abuse-of-discretion standard. *In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 14. An abuse of discretion occurs when a court exercises "its judgment[] in an unwarranted way[] in regard to a matter over which it has

discretionary authority." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. An abuse of discretion is evident where the trial court's decision lacks a "'sound reasoning process.'" *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Because our review under the abuse-of-discretion standard is deferential, as long as the juvenile court considered the appropriate factors under R.C. 2152.12(D) and (E), and there is some competent, credible evidence to support the juvenile's court's findings, there is no abuse of discretion in deciding whether to transfer the case to the common pleas court. *State v. Jordan*, 8th Dist. Cuyahoga No. 111547, 2023-Ohio-311, ¶ 11, citing *Nicholas*, Slip Opinion No. 2022-Ohio-4276 at ¶ 73.

{¶ 21} Under R.C. 2152.02(A), the overriding purposes for juvenile dispositions are "to provide for the care, protection, and mental and physical development of children * * *, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." These purposes are to be achieved "by a system of graduated sanctions and services." *Id.* Arshaun contends that the juvenile court acted unreasonably because it wrongly concluded that no further juvenile court services were available to him, even though the court specifically found that he had never been committed to ODYS, which has care and treatment services for juveniles. Thus, he contends that the juvenile court's nonamenability finding was based on a

demonstrably false premise that there were no remaining juvenile court options to hold him accountable and restore and rehabilitate him.

{¶ 22} We agree and find that the juvenile court's conclusion that there was nothing left to offer Arshaun in the juvenile court system was not supported by the evidence presented at the amenability hearing. Toppin's testimony at the hearing and Dr. Williams's report established that Arshaun had been provided school-based services and community services with multiple agencies while he was attending school. However, Toppin's testimony and Dr. Williams's report demonstrated that although community-based services had been offered to Arshaun while he was in the juvenile system, each of those services (other than the two-day psychiatric hospitalization) failed, through no fault of Arshaun. In fact, the evidence demonstrated that either the requested services were declined by the providers (i.e., the MST providers) or the services never even started. Thus, the trial court's conclusion that there was "nothing left" for Arshaun in the juvenile system was not supported by the record. Instead, the evidence demonstrated that because the offered services had never even begun, much less been completed, Arshaun could have participated in the services while in the juvenile system if offered the opportunity.

{¶ 23} As stated by Ohio Supreme Court, "[t]he question of a juvenile's amenability to care and rehabilitation in the juvenile system is one of *the juvenile's* rehabilitative potential, and it is separate from the question of the services the state has to offer or the services a juvenile court judge *perceives* the state has to offer."

(Emphasis sic.) *Nicholas*, Slip Opinion No. 2022-Ohio-4276 at ¶ 54. Here, the juvenile court concluded that Arshaun was not amenable to rehabilitation because the court believed there were no services available for him other than those already offered to him. This conclusion, however, is directly refuted by the evidence at the amenability hearing that Arshaun had never been committed to ODYS — which has services to treat his mental health problems to restore and rehabilitate him — and by the evidence that the offered services never began. Accordingly, the juvenile court erroneously based its conclusion on what it perceived to be the state's lack of further resources for Arshaun instead of Arshaun's rehabilitative potential.

{¶ 24} Moreover, the trial court's conclusion that there were no services available to Arshaun other than those already offered to him is refuted by R.C. 2152.19(A)(2), which provides that in addition to any other disposition authorized or required by R.C. Chapter 2152, the juvenile court may commit a delinquent child

> [t]o the temporary custody of any school, camp, institution, or other facility operated for the care of delinquent children by the county, by a district organized under section 2152.41 or 2151.65 of the Revised Code, or by a private agency or organization, within or without the state, that is authorized and qualified to provide the care, treatment, or placement required.

Thus, a juvenile court "may not base a decision to transfer a child to adult court on a perceived lack of * * * resources when the General Assembly has made available other options should the need for those additional resources arise." *Nicholas* at ¶ 55. As set forth in R.C. 2152.19(A)(2), there were indeed services available to Arshaun in the juvenile system other than those that had already been offered to him.

{¶ 25} Finally, the juvenile court's conclusion that the victim in this case suffered economic and psychological harm is not supported by any evidence in the record. Because neither party produced any evidence whatsoever at the amenability hearing regarding the harm suffered by the victim, the juvenile court's speculation that the victim suffered economic and psychological harm, and that this factor therefore weighed in favor of transfer, is contrary to the record.

{¶ 26} We recognize that a juvenile court has discretion to decide how much weight to give to each factor in R.C. 2152.12(D) and (E) and that disagreement with the way the juvenile court weighed the factors is not a reason to reverse the court's discretionary decision regarding transfer to adult court. *See Jordan*, 2023-Ohio-311 at ¶ 10, 12. In light of the preceding discussion, however, we do not consider this case as one involving the juvenile court's alleged improper weighing of the factors. Rather, the juvenile court's finding that there were no other mental health or rehabilitative services in the juvenile system to offer Arshaun, as well as its finding that the victim suffered economic and psychological harm, were unsupported by and indeed contrary to the evidence established by the record. Absent these findings, the juvenile court's amenability determination was not supported by the preponderance of the evidence and, accordingly, the court abused its discretion in relinquishing jurisdiction. *See Nicholas*, Slip Opinion No. 2022-Ohio-4276 at ¶ 43, 56 (where the juvenile court's decision that the juvenile was not amenable to treatment and rehabilitation in the juvenile system was based on its perception that that ODYS lacked the necessary resources to treat the juvenile's mental illness, but

the perception was contrary to the evidence in the record, the court's amenability determination was not supported by the preponderance of the evidence and thus was an abuse of discretion).

{¶ 27} The first assignment of error is sustained. Arshaun's convictions are vacated and the matter is remanded to the juvenile court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, PRESIDING JUDGE

LISA B. FORBES, J., CONCURS;
EILEEN T. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)


EILEEN T. GALLAGHER, J., DISSENTING:

{¶ 28} I respectfully dissent and would affirm the trial court judgment because the evidence shows that Arshaun is not amenable to care or rehabilitation within the juvenile system and is a threat to public safety. Arshaun had three prior adjudications prior to this case, including prior felonies. (Amenability tr. at 11.) His prior adjudications included offenses such as failure to comply, receiving stolen

property, and obstructing official business. At the time of the amenability hearing, he had three active cases pending, including this case. His other cases included offenses such as assault, domestic violence, and resisting arrest. And he was charged with aggravated robbery, grand theft of a motor vehicle, having weapons while under disability and other offenses in the instant case. And he was on community control when he committed the acts giving rise to this case.

{¶ 29} As stated by the majority, Arshaun failed to complete some services through no fault of his own. However, he has been receiving services since he was eight years old. He received school-based services through Beech Brook when he was eight, he received a psychiatric evaluation through Murtis Taylor when he was ten, he received services though Guidestone when he was 11, and he was referred to PEP Connections when he was 11 years old, which lasted for one year. (Amenability tr. 15.) He was also referred to Bellefaire for school-based services while he was a student at Miles Park Elementary. (Amenability tr. 15.) Arshaun's probation officer testified: "So since approximately age 8 through his school years he's been involved with counseling in the community." (Amenability tr. 15.) Although Arshaun's grandmother was recently trying to engage him in counseling, he was arrested before the counseling could start. Therefore, the failure to receive those services were Arshaun's fault.

{¶ 30} Arshaun's past and current offenses of violence demonstrate an escalation in criminal behavior from misdemeanors to aggravated robbery involving a firearm. Indeed, Dr. Williams concluded that Arshaun's risk for dangerousness

was in the high offender range. Although Arshaun behaves better when he takes his medication, he has not demonstrated medication compliance in the community. Arshaun has not benefitted from the services he has received and has not demonstrated a willingness to be rehabilitated. Therefore, I would find no abuse of discretion in the court's determination that Arshaun is not amenable to rehabilitation through the juvenile system, and I would affirm the trial court's judgment.