[Cite as *In re D.W.*, 2025-Ohio-1255.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE D.W. | : | |
| | | Nos. 113994 and 113995 |
| A Minor Child | : | |
| | | |
| [Appeal by the State of Ohio] | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 10, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. DL-23-110620 and DL-23-111126

---

### *Appearances:*

James J. Hofelich, *for appellee*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory J. Ochocki, Assistant Prosecuting Attorney, *for appellant*.

WILLIAM A. KLATT, J.:

{¶ 1} Appellant, the State of Ohio, appeals the juvenile court's May 1, 2024 order denying the State's motion for a discretionary transfer of appellee, D.W., to the General Division of the Cuyahoga County Court of Common Pleas for the

purpose of criminal prosecution pursuant to R.C. 2152.10(B). For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} This appeal stems from two separate complaints that were filed in the Cuyahoga County Court of Common Pleas, Juvenile Division. In Cuyahoga C.P. No. DL-23-110620, the complaint alleged that D.W. was a delinquent child because he committed three counts of robbery, one count of theft, one count of assault, and one count of aggravated menacing on June 21, 2022. In Cuyahoga C.P. No. DL-23-111126, the complaint alleged that D.W. was a delinquent child because he committed robbery, theft, and assault on May 25, 2022. D.W. was 15 years old at the time of the alleged offenses.

{¶ 3} The State moved to transfer D.W. to the general division for purposes of criminal prosecution.

{¶ 4} On December 12, 2023, probable cause was established; D.W. waived his right to a probable cause hearing in both cases.

{¶ 5} On April 15, 2024, the juvenile court held an amenability hearing. The court heard testimony from Dr. Lynn Williams ("Williams"), who had conducted a psychological evaluation of D.W. pursuant to R.C. 2152.12 and Juv.R. 30. Williams testified as to the evaluation, explaining that she looked at risk factors for violence, treatment amenability, and maturity. With respect to D.W.'s risk of violence tendencies, Williams testified that she considered historical, societal, and clinical factors and noted that D.W. had a history of fighting, parent criminality,

and an unstable family environment. Ultimately, Williams concluded that D.W. had a moderate risk of violence. Williams testified that with respect to D.W.'s maturity, she evaluated his autonomy, cognitive capacity, and emotional maturity. Williams explained that D.W. scored in the 83rd percentile for maturity, which placed him in the high offender range. With respect to treatment amenability, Williams testified that D.W. first became involved with juvenile court at age 11, he had previously been on probation for different offenses, and he had completed multiple treatment programs, including a residential placement.

{¶ 6} The State called Detective Wohl from the Cleveland Division of Police to testify. D.W.'s counsel objected to the detective testifying as to D.W.'s amenability because D.W. had stipulated to probable cause. The court briefly recessed and subsequently sustained D.W.'s objection and declined to hear testimony from the detective. The court stated that it would consider the police reports in both cases because they had been stipulated to as part of D.W.'s waiver of the probable cause hearing.

{¶ 7} The court went on to hear from D.W.'s counsel and the State as to the factors in favor of and against transfer pursuant to R.C. 2152.12(D) and (E). The State argued that the victims suffered physical, psychological, and economic harm because D.W. approached both victims at a gas station and threw them on the ground; D.W. stole the wallet of one of the victims. The State also argued that the harm to the victims was exacerbated by their ages because the victims were 71 and 83 years old, respectively. The State acknowledged that D.W. had no relationship to

either victim and that there was no evidence in either case that D.W. committed the alleged acts as part of his involvement in a gang. The State further argued that D.W. had multiple pending cases when the underlying cases occurred. Finally, the State argued that the factors contemplated by Williams's evaluation weighed in favor of transfer.

{¶ 8} On May 1, 2024, the juvenile court denied the State's motions for discretionary transfer. In the corresponding journal entry, the court made the following findings:

> The court finds after a full investigation, including a mental examination of said child made by a duly qualified person, and after full consideration of the child's prior juvenile record, family environment, school record, efforts previously made to treat and rehabilitate the child, including prior commitments to the Department of Youth Services, the nature and severity of the offense herein, the age, physical, and mental condition of the victim as affected by the matter herein, and other matters of evidence, that there are reasonable grounds to believe that the child herein is amenable to care or rehabilitation within the juvenile system.
>
> The court considered the relevant factors in favor of transfer pursuant to R.C. 2152.12(D) and makes the following findings:
>
> — The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.
>
> — The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because the physical or psychological vulnerability or the age of the victim.
>
> — The child's relationship with the victim facilitated the act charged.
>
> — The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the

firearm, brandished the firearm, or indicated that the child possessed a firearm.

The Court considered the relevant factors against transfer pursuant to R.C. 2152.12(E) and makes the following findings:

— There is sufficient time to rehabilitate the child within the juvenile system, and the level of security available in the juvenile system provides a reasonable assurance of public safety.

The Court further finds that the child has never received a sentence to the Ohio Department of Youth Services and as such there are programs and resources potentially available to further the child's rehabilitative potential, pursuant to *State v. Carter*, 2023-Ohio-4310.

{¶ 9} The State filed a motion for leave to appeal both cases. This court granted this motion and consolidated the cases for appeal. The State presents two assignments of error for our review:

I. The juvenile court abused its discretion in denying the State's motion for discretionary transfer.

II. The juvenile court erred when it refused to allow the detective to testify at the amenability hearing.

**Law and Analysis**

{¶ 10} In the State's first assignment of error, it argues that the juvenile court abused its discretion in denying the State's motion for discretionary transfer. Specifically, the State argues that the juvenile court did not make a finding, pursuant to R.C. 2152.18(D)(8), that D.W. was emotionally, physically, or psychologically mature enough for transfer despite Williams's testimony that D.W. scored in the high range for sophistication maturity. Further, the State argues that the juvenile court's finding that there was sufficient time to rehabilitate D.W. in the juvenile justice system was directly refuted by the evidence.

{¶ 11} Ohio's juvenile justice system provides for two types of transfer: discretionary and mandatory. *State v. Carter*, 2023-Ohio-4310, ¶ 2 (8th Dist.), citing *State v. Hanning*, 2000-Ohio-436. "'Discretionary transfer affords juvenile court judges the discretion to transfer to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system or who appear to be a threat to public safety.'" *Id.*, quoting *State v. Nicholas*, 2022-Ohio-4276, ¶ 3, citing R.C. 2152.12(B).

{¶ 12} In determining whether to exercise its discretion to transfer a juvenile to adult court under R.C. 2152.12(B), the juvenile court must weigh the statutory factors in R.C. 2152.12(D) in favor of transfer against the statutory factors in R.C. 2152.12(E) against transfer and the court must indicate on the record the specific factors it weighed in making its determination. *Carter* at ¶ 4, citing R.C. 2152.12(B)(3). A juvenile court's decision to exercise its jurisdiction to transfer a juvenile to adult court must be supported by a preponderance of the evidence, and the State bears the burden of persuasion when it asks the juvenile court to transfer a juvenile's case to adult court. *Id.*, citing *Nicholas* at ¶ 27, 35.

{¶ 13} Juvenile courts have wide discretion to transfer their cases to adult courts, and therefore, we review a juvenile court's decision to bind over a case for an abuse of discretion. *State v. Hennings*, 2019-Ohio-4675, ¶ 12 (8th Dist.), citing *State v. Poole*, 2012-Ohio-5739, ¶ 6 (8th Dist.). Where the juvenile court weighed the statutory factors and the record shows a rational basis for the court's findings

regarding those statutory factors, an appellate court cannot conclude that the trial court abused its discretion in transferring or maintaining jurisdiction. *Id.*

{¶ 14} Here, the record is clear that the juvenile court considered the relevant statutory factors weighing in favor of and against transfer. With one exception, the record reflects a rational basis for each of the court's findings. The exception — the juvenile court's finding that D.W.'s relationship with the victims facilitated the offense — was unsupported by the record, which indicates that both victims were unknown to D.W. Thus, this factor actually weighs against transfer.

{¶ 15} The State argues that the juvenile court failed to make numerous findings supported by the evidence presented at the amenability hearing. Specifically, the State argues that the juvenile court did not make a finding pursuant to R.C. 2152.12(D)(6) that "at the time of the act[s] charged, D.W. was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction," despite the fact that the record reflects that D.W. had multiple cases pending before the juvenile court at the time of the amenability hearing. While this finding, had it been made by the juvenile court, would have been supported by the record, the fact that no such finding was made does not render the juvenile court's decision an abuse of discretion. The relevant statute, R.C. 2152.12(D), states that in considering whether to transfer a juvenile to adult court, the juvenile court "shall consider" the enumerated factors, and any other relevant factors. The juvenile court's journal entry states that it considered the relevant factors in favor of transfer pursuant to

R.C. 2152.12(D); the absence of any particular factual finding in the court's journal entry does not mean that the trial court violated the governing statute, let alone abused its discretion.

{¶ 16} The State also argues that the juvenile court failed to make a finding, pursuant to R.C. 2152.12(D)(8), that D.W. was emotionally, physically, or psychologically mature enough for the transfer, despite Williams's testimony as to D.W.'s maturity. Williams testified at length as to D.W.'s maturity, as well as his demonstrated ability to change his behavior and his likely amenability to juvenile court sanctions. The juvenile court's findings demonstrate that the court considered Williams's testimony. We cannot conclude that the fact that the court did or did not make any particular finding amounts to an abuse of discretion.

{¶ 17} Finally, the State argues that the juvenile court's finding that there was sufficient time to rehabilitate D.W. in the juvenile justice system was directly refuted by the evidence. We disagree. As discussed above, the court considered the evidence presented at the amenability hearing, including Williams's testimony that D.W. demonstrated an ability to change his behavior. Having considered this, the juvenile court concluded that D.W. was amenable to juvenile court. This does not amount to an abuse of discretion.

{¶ 18} For these reasons, the State's first assignment of error is overruled.

{¶ 19} In its second assignment of error, the State argues that the trial court erred and abused its discretion when it refused to allow the detective to testify at the amenability hearing.

{¶ 20} A court has discretion to admit or exclude evidence, and appellate courts review a decision to allow or disallow testimony under an abuse-of-discretion standard. *In re C.L.*, 2021-Ohio-3819, ¶ 16 (8th Dist.), citing *Buckmaster v. Buckmaster*, 2014-Ohio-793, ¶ 21 (4th Dist.).

{¶ 21} The State argues that the detective would have provided testimony relevant to numerous statutory factors the juvenile court was required to consider. The State also argues that because it was not permitted to present the detective's testimony, the juvenile court prevented the State from presenting its case as it saw fit. We disagree.

{¶ 22} While the detective likely would have provided testimony relevant to some of the statutory factors, including the harm to the victim, the victim's age exacerbating their harm, and the fact that D.W. had a firearm on him during the acts, the detective's testimony was not necessary. The parties stipulated to the police reports, which contained much of the information that would have been included in the detective's testimony. The juvenile court made findings regarding the aforementioned factors based on these stipulations and the testimony that was presented at the amenability hearing. Therefore, we cannot conclude that the trial court abused its discretion in not permitting the detective to testify. The State's second assignment of error is overruled.

{¶ 23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
WILLIAM A. KLATT, JUDGE*

ANITA LASTER MAYS, J., CONCURS;
EILEEN T. GALLAGHER, P.J., DISSENTS (WITH SEPARATE OPINION)

(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court of Appeals.)


EILEEN T. GALLAGHER, P.J., DISSENTING:

{¶ 24} I respectfully dissent and would have found merit to both of the State's assigned errors and reversed the judgment of the juvenile court.

{¶ 25} Preliminarily, I believe the court failed to make the proper statutory findings in denying the State's motion to transfer.  With regard to amenability under R.C. 2152.12(B)(3), the juvenile court may transfer a case "if the child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions."  The court in this case ultimately concluded that there were "*reasonable grounds to believe that the child herein is amenable to care or rehabilitation within the juvenile system.*" (Emphasis added.)  This court has previously noted that a mere finding that there are "reasonable grounds to believe" a child is amenable is not the same as finding

that he or she is actually amenable. *See State v. T.S.*, 2024-Ohio-4898, ¶ 87 (8th Dist.) ("Although we do not believe that 'magic words' are required under R.C. 2152.12(B)(3), we do believe that there is a meaningful difference between finding that there are 'reasonable grounds to believe' a fact or circumstance exists and finding that a fact or circumstance, in fact, exists.").[1] In addition, the juvenile court made no finding regarding the safety of the community prong.

{¶ 26} However, even if the court had made the proper statutory findings, I would still reach the same result. After thoroughly reviewing the record, I conclude that the evidence presented at the amenability hearing supports a finding, by a preponderance of the evidence, that D.W. was not amenable to care or rehabilitation within the juvenile system, and I would find that the juvenile court abused its discretion in denying the motion to transfer.

{¶ 27} In making an amenability determination, the juvenile court must consider all "relevant factors," including specific factors identified in R.C. 2152.12(D) and (E), that weigh in favor of and against a transfer. R.C. 2152.12(B)(3), (D), and (E). No one factor under R.C. 2152.12(D) or (E) is outcome determinative. If, by a preponderance of the evidence, the trial court concludes that the factors in favor of the transfer outweigh those against, the statutory analysis is satisfied. *State v. Nicholas*, 2022-Ohio-4276, ¶ 35. Thus, if "'there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion.'"

---

[1] The *T.S.* Court noted that the "reasonable grounds to believe" language was found in an earlier version of the statute.

*Nicholas* at ¶ 73 (Kennedy, J., dissenting), quoting *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401 (1998). "The appellate focus is on the totality of the consideration required under R.C. 2152.12(B)-(E)." *State v. Jordan*, 2023-Ohio-311, ¶ 12 (8th Dist.).

{¶ 28} In the instant matter, the juvenile court made no findings at the conclusion of the amenability hearing. Instead, it indicated that it would take the matter under advisement and, after reviewing the police reports and the statutory factors, rule by written decision.

{¶ 29} Within its written decision, the juvenile court determined that the following factors weighed in favor of transfer: (1) the victim of the act charged suffered physical or psychological harm or serious economic harm; (2) the physical or psychological harm suffered by the victim was exacerbated because of the physical or psychological vulnerability or the age of the victim; (3) the child's relationship with the victim facilitated the act charged; and (4) the child had a firearm on or about the child's person at the time of the act charged or used, displayed, or brandished the firearm in the commission of the act charged, or indicated that he had a firearm.

{¶ 30} As noted by the majority and acknowledged by the State, the juvenile court incorrectly found that the relationship with the victim facilitated the act charged. There was no evidence that D.W. had any relationship with either victim.

{¶ 31} I agree with the juvenile court's remaining findings related to the other factors it found in favor of transfer; however, I believe that the court erred in

failing to find under R.C. 2152.12(D)(6) that "at the time of the act[s] charged, [D.W.] was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction."

{¶ 32} The majority acknowledges that had this finding been made, it would have been supported by the record. Indeed, the record reflects that D.W. had been on community control at the time of the acts charged and had several other cases pending at this time.

{¶ 33} In addition, the court failed to make a finding that D.W. was emotionally, physically, or psychologically mature enough for transfer. There was certainly evidentiary support for a finding under this factor. Dr. Williams testified that D.W. scored in the 83rd percentile for sophistication maturity. She noted that this high level of sophistication and maturity was being used "in a criminogenic manner."

{¶ 34} Yet, the majority states that the court did not err in failing to make either of the above findings and noted that the trial court stated that it had considered all of the factors. The majority maintains that "the absence of any particular factual finding in the court's journal entry does not mean that the trial court violated the governing statute, let alone abused its discretion." However, R.C. 2152.12(B)(3) provides that the court *must* indicate on the record the specific factors it weighed in making its determination. Thus, we cannot simply assume that the court weighed the above factors, when it failed to state in its decision that it did

so. If the court based its decision on anything beyond the factors stated in its journal entry, it was required to so indicate. It is not appropriate for this court to acknowledge that there was evidence in support of certain factors and then simply presume that the juvenile court utilized those factors in making its determination while disregarding the court's statutory obligation to set forth *all* of its findings.

{¶ 35} With respect to the findings weighing against transfer, the juvenile court only found one factor under subsection (E) — that there was "sufficient time to rehabilitate D.W. within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety." At the time of the hearing, D.W. was 17 years old and had been in the juvenile system for six years. He had seven prior adjudications and had received multiple court-ordered services, yet he continued to pick up cases. At the time of the amenability hearing, he had *nine* other pending cases, including a case in adult court.

{¶ 36} The juvenile court stated that D.W. had "never received a sentence to the Ohio Department of Youth Services and as such[,] there [were] programs and resources that could further his rehabilitative potential under *State v. Carter*, 2023-Ohio-4310 (8th Dist.)." The court's reliance on *Carter* is misplaced; *Carter* does not stand for the proposition that the availability of services and resources should be used to weigh against transfer. Rather, the *Carter* Court refuted the juvenile court's conclusion that it had to transfer the child since there were no services available to the juvenile, noting that a court is not permitted to base its decision to transfer a child based upon a lack of resources.

{¶ 37} The inverse is true here — a finding that the juvenile court has resources available for D.W.'s rehabilitative potential is also not a reason to deny transfer. "The question of a juvenile's amenability to care and rehabilitation in the juvenile system is one of the juvenile's rehabilitative potential, and it is separate from the question of the services the state has to offer or the services a juvenile-court judge perceives the state has to offer." *Nicholas*, 2022-Ohio-4276, at ¶ 54. Here, the juvenile court looked solely at the existence of resources rather than D.W.'s potential to be rehabilitated. The record demonstrates that D.W. has not benefited from the services he has received and has not demonstrated a willingness to be rehabilitated.

{¶ 38} Consequently, I would have found that the juvenile court abused its discretion in determining that D.W. was amenable to rehabilitation through the juvenile system. Because I do not believe that there was some rational and factual basis to support the court's decision, I would reverse the denial of the motion to transfer.

{¶ 39} Finally, while I believe the State met its burden of persuasion based upon the evidence presented at the amenability hearing, I would have further found that the trial court erred in excluding the testimony of the detective. When defense counsel objected to the State calling the detective as a witness during the amenability hearing, he did not assert that D.W. would have been prejudiced or that the detective's testimony was inadmissible for any particular reason. He only argued that because probable cause had been stipulated to, the detective's testimony was

essentially unnecessary at the amenability hearing. In sustaining the objection, the court did not find that the testimony would be cumulative, irrelevant, or prejudicial; the court merely acknowledged that it would consider the police reports and that no further testimony was necessary.

{¶ 40} The State bears the burden of persuasion when it asks the juvenile court to transfer a case to adult court. *Nicholas*, 2022-Ohio-4276, at ¶ 27. "Thus, the facts presented to the juvenile court with respect to a discretionary transfer must persuade the court that the juvenile is not amenable to care or rehabilitation in the juvenile system." *Id.* Because the State bears the burden of persuasion, the State should be permitted to decide what evidence and testimony it chooses to present, albeit within the applicable law and evidentiary rules. While there is no argument that the court could consider the police reports regarding the two incidents, only the State knows what additional information the detective would have testified to that would have assisted it in overcoming its burden at the amenability hearing. There is no evidentiary rule precluding testimony that is "unnecessary," and a defendant should not have a say in what otherwise admissible testimony the State may present.

{¶ 41} With regard to this assignment of error, I would have remanded this matter for a new hearing to allow the State to present the testimony of the detective.